Good morning, your honors. My name is Kevin McCoy. I represent David Powers in this matter. Our position is simple and straightforward under bribe. Mr. Powers, in this case, was negotiating for a specified sentence, a specific sentence, that was within an accurately computed guideline range. He wanted to be able to withdraw his plea if the guideline range required a sentence greater than 210 months. His agreement allowed him to do that. He wanted to be able to appeal his 210-month sentence if it could not be factually supported by the guidelines, and his appeal allowed him to do that. And the last thing he wanted to do was if the guideline range that applied to his case was ever modified, he wanted to be able to bring a 3582C2 motion asking for the benefit of that reduction. His plea agreement promised him that he could do that. If you applied bribe to this case, it's very clear that his sentence was based on, dependent on, an accurately computed guideline range. Since that range has been lowered, he is entitled to bring his 3582C2 motion now. Mr. Powers Contrary to what we just heard from your colleague, Ms. Tatter, you want a contracts analysis in this case because your contract is different. Mr. Powers My contract is good. This was negotiated. You know, I'm not quite as familiar with Scott as Ms. Tatter was, and I understand all of the arguments that she's offering, and the reality on the ground in 2002 and in 1997, the guidelines mattered. And 3553A mattered less because there was one provision that said if it happened to be inconsistent, you know, with the guidelines, you went with the guidelines. But in my case, I do have a contract where he was expressly promised the right to bring a 3553A. He had a situation where he was negotiating for a guideline range, and the government wanted a specific sentence. He wanted to make sure that was supported by the guidelines, and if it wasn't, he could withdraw. And if he disagreed, in other words, I believe the criminal history category was three, and I can't remember what the offense level was, but the district court was charged with determining what relevant conduct was. The district court was charged with determining what the criminal history was, and the district court was charged with assessing acceptance of responsibility. Mr. Contrary Could you show us where the language is that we should look at to distinguish this case from Scott? Yes, sir. If you will look at ‑‑ I'm going to read three pages. First look at Excerpt 74 that says the defendant's sentence, paragraph C at the top, is going to be determined by the application of the guidelines. Then if you'd look at Excerpt ‑‑ You mean the boilerplate that the U.S. Attorney's Office has been using since 1987? The boilerplate that I'm going to rely on, but I understand. Okay. But more importantly, frankly, if you look at 76, please, look at paragraph K. The defendant agrees that if the ‑‑ 76, paragraph K, did you say? I said 76, sir. 76, thanks. Okay. Paragraph K. Got it. The defendant agrees that if the court accepts this plea agreement and imposes a lawful sentence in accordance with its terms without erroneous factual findings, he'll waive his right to sentence appeal. So he reserved his right to appeal erroneous factual findings in the guideline computation, and then at the end of paragraph K, whatever benefits the defendant may derive from any future modification of the United States sentencing guidelines as set forth in 3582C2 shall not be affected by the waiver. So he gets to go to court, and then you can see at page 77. Well, let's stick with that sentence a minute. Sir. Whatever benefits he may derive from future modification of the sentencing guidelines shall not be affected by this waiver. You say that means he preserves any benefits from future modifications? It preserves his right to go in and ask. I mean, I think it's sort of the court has discretion to grant or deny 3582C2 based on the merits at that time, but it preserves his right to go in there and ask for that. It's not a guarantee that he'll win, but it's a guarantee they'll have access to court under that statute. Okay. Does the 3582C, I need to look at the statute here, doesn't it say that it has to have been based on the guidelines? It does indeed. I mean, we're sort of back to the same issue that we're wrestling with in both cases. Right. If you look at the dissent in Cobb, I don't remember the name of the judge, but he said. Judge Hartz. Okay, Judge Hartz. What he was saying was that you have to, if the sentence can, if it can't be legally challenged, if you're stuck with a sentence no matter what, then how can you say it was based on the guidelines? But here it's based on the guidelines because if it exceeded 210, because it wasn't supported by the guidelines, Mr. Powers could withdraw. But if Judge Sedgwick was erroneous when he determined the criminal history category and the offense level, then Mr. Powers could appeal and get this court to say, Judge Sedgwick erred when he imposed the 210 months. Maybe I didn't make my question very clear. As I understand what happened at the time, you had no challenge to the manner in which Judge Sedgwick determined the guideline range. Therefore, no appeal was taken. That is correct. Had it been erroneous, he could have. Right. I understand that. Okay. So we'll take that out of my hypothetical, or it's not really a hypothetical, my question. So then my question is, aren't we back to whether or not he is entitled under 3582C2 to challenge based on the crack powder cocaine distinction? And we're back to exactly the same problem we have in the Scott case, which is was the sentence based on the guidelines where there was a stipulation? I guess with respect, I disagree. And the reason that I say that is at the time. Disagree with my question? No, disagree with you. What's your answer to my question? I guess my answer is that when the parties are negotiating the plea agreement, nothing is always certain. And so Mr. Powers wanted to be able to appeal. Now, in turn, he did not appeal because he accepted the findings of fact that Judge Sedgwick made with regards to those matters. But if he had disagreed, for instance, if the pre-sentence report had come out and said your criminal history category is 2, and Judge Sedgwick said, well, I understand what the pre-sentence report says, and I recognize your objection, but I'm going to give the 210 months anyway, he could have appealed and gotten that reversed in my view. And that's, I think, my point and my response. I hope it's responsive to your question. That's what I'm trying to get at. It does seem there is a difference between the two cases, both in the language, but also because of the fact that there was a lot more sentencing guideline computation that was required in order to settle on the sentence. Right. I think, I mean, our view is it was central to Mr. Powers' decision to do this because he wanted to protect his interests. And to see if I can tease this out a little bit, what other counts was he facing that were dismissed? He was facing a variety of drug counts which were factored in as relevant conduct. He was facing three 924C counts which were dismissed. So he had the same incentives, basically, that Mr. Scott did to enter into this type of agreement. Sure. And, yes, but, I mean, I think what's important to remember is that the gun conduct was factored in with the two-level bump in the guideline computation. Well, but that doesn't get him by. No, 55 years. On the 924C, he's looking at a substantial consecutive time. Sure. Two additional points with regard to that. Number one was he bargained away, he agreed to fully cooperate with the government, but bargained away a substantial assistance motion. In other words, he gave them the cooperation without that as a possibility. And, secondly, I go back to my plea agreement. If the government didn't want it to be based on the guidelines and wanted that to be the central factor, it should have said so. Here it said, you get to withdraw if it's over 210. If the factual findings don't support 210, you get to appeal and you get to come back into court for the 3553A. I'm having trouble getting around the 924Cs. It seems like, as a practical matter, the 924Cs are what really matter to please because of the mandatory consecutive no probation, no parole provision on 924Cs. Okay. I guess I would say else is dwarfed by that. Well, it may be dwarfed, but, you know, you still go back to the agreement as to what they agreed to. And what we agreed to was to preserve the guideline calculation even under that deal was critical. The question was whether it was central to the negotiation or not, and it clearly was. Now, you know, people may disagree with that. What am I missing here? I'm thinking the guideline calculation is indeed critical. It's kind of like deciding whether to buy a house based on shopping the market and getting an appraisal and the bank gets its own independent appraisal, and you have all these appraisals to decide what the house is worth, but ultimately you make a deal. And your deal is that if the appraisal comes in at X, I'll buy the house. Well, usually your deal is I'll buy the house for X dollars, and then if the market crashes or an appraiser made an arithmetic mistake, tough. Well, I mean, I've bought houses that have been exactly this. If it comes in here, I'll buy it. I have a former law clerk who bought a condo just before the market crashed. Stuck. Of course. But that was the deal he struck. This fellow bought a plea agreement just before the powdered cocaine change was kind of like a market crash in the sentences for crack. Why isn't he stuck? Because his agreement, the statute, 3580, 3550, the statute talks about being based on a guideline range. This one was. And the terms of the plea agreement said that. And that's why he's entitled to relief here. Judge Sedgwick should be asked to resolve this one on the merits. I have 14 seconds. I'll save that. Thank you. Well, actually, you're that much over. Oh, I beg your pardon. I didn't listen. Thank you, counsel. Mr. Court, Joseph Bottini for the United States. It's the government's position that like the case that was just submitted, Mr. Scott's case, this sentence that was imposed on Mr. Powers by Judge Sedgwick was clearly the product of an agreement between the parties to recommend a specific sentence. That agreement was driven by a number of considerations. Clearly, the guidelines were one of those considerations. But should we draw an inference from this sentence in K that he doesn't waive whatever benefits he may derive from future modifications of the guidelines? Is he trying to preserve the right to seek a modification of the sentence if the guidelines change? I don't think so, Judge Kleinfeld. That provision was added there, I think, in recognition that if there were a modification somewhere down the road, that Mr. Powers wouldn't be foreclosed from seeking relief by the terms of the appellate waiver. I realize that by its terms, it only speaks to the scope of the waiver. Nevertheless, there was talk for years about how the crack sentencing guidelines were racially discriminatory, and every year people charged up the hill trying to change them. It's funny to say, well, I can seek, but I shall not find. Well, it certainly was not a guarantee that Mr. Powers was going to enjoy a benefit from a modification. If that were the case, it wouldn't have said that. Why shouldn't I interpret it to mean if there's a modification, then it's wide open up to the judge to take another look? Because it says may. It doesn't say will, shall, must. And it's critical where that language appears. It's in the appellate waiver language, obviously. So what that language does at most is simply clarifies that Mr. Powers, in reaching this agreement, and in agreeing to the terms of the appellate waiver language, wasn't waiving his right to seek relief in the future. Not a guarantee that he was going to receive it. This plea agreement. I wonder if what that means is he's not bound, that we should say he's not bound by the 11A1C deal. It goes back, and the judge can take a look at whether that's still a fair sentence, and in all likelihood Powers loses because the judge says, well, you got the benefit of those 924C dismissals. That's a lot bigger deal than the change in the guidelines, so I'm going to stick. Well, in fact, Judge Sedgwick did entertain the motion for modification under 3582C. He just chose to deny the relief requested. I think he denied it on a legal basis rather than reevaluating the sentence. Right. And I think all that language means in the government's view is simply that Mr. Powers wouldn't be foreclosed from filing a motion at all seeking relief under 3582C. That's what that language is. What I'm hypothesizing is suppose you have somebody who isn't getting the benefit of all these 924C deals. It was just a simple cocaine case, and he had the same language. There a judge might well say, well, it's a whole different framework now. Of course, it's not that different. What is it, a two-level discount? It's two levels, yes. It would be a different posture, there's no doubt about that. If that were the universe of the facts, then it would obviously be a different situation. Here, however, Mr. Powers, like Mr. Scott, was facing a huge chunk of time in relation to those 924C counts had he gone to trial. In fact, the plea agreement recognizes that. This is at page 83 of the excerpt of record. The plea agreement had a section, it still does, in our district covering the adequacy of the agreement. And towards the bottom of the page, it says, the United States has agreed to dismiss certain firearms charges against this defendant, which require the imposition of mandatory minimum sentences upon conviction, counts 13, 20, and 21. In reaching this agreement, the government has considered the defendant's agreement to cooperate, as set forth in section 2 of this plea agreement, as well as the agreed sentence of incarceration, which the defendant faces for the count of conviction. That's explicitly set out in the plea agreement. That was the heart of the bargain in this case. Mr. Powers discounted his risk of jail time through his agreement that he would serve 210 months. In addition, he gave a concession and agreed to cooperate with the understanding that any cooperation that he provided would not form the basis of a substantial assistance departure motion. But so that, again, there are a number of factors that drove the bargain that the parties negotiated in this case, Judge Kleinfeld. And I think your analogy there about the purchase of a home is really relevant to the calculus here. I mean, the guidelines, calculations that are set forth in the plea agreement, again, they're there to inform the district court of here's what the parties have considered in reaching this agreement, this agreement that this man will serve 210 months in custody. So Judge Sedgwick has some foundation to look at this and determine is this reasonable or not. And clearly, when he imposed the sentence in this case, he relied on that. But he also said in his comments from the bench that I've looked at the 3553 factors as well in determining whether this sentence the parties have recommended that I impose is reasonable or not. And that's what I think takes it out of the realm of was this based on the guidelines. No doubt that the guidelines were a consideration. Just a minute. Isn't the judge supposed to look at those factors in every case? He is, indeed. Well, why do you say it makes a difference if he looked at those factors? Why does that say it's not based on the guidelines? If your argument is correct, then no sentence would ever be based on the guidelines because the judge is always supposed to look at those other factors. That's a good point. That's a good point, Judge Tashima. But it nevertheless reflects that the district court in determining whether to accept the agreement by the parties that Mr. Powers would be sentenced to 210 months in custody considered a number of things, not just the guidelines themselves. And I think that's the distinction that is important in this case as it was in Mr. Scott's case. The fact that they were considered by the parties in reaching this agreement is not enough. And that's what the court, in fact, explicitly said in the Breyer decision. It seems to me there has to be some kind of context in order to settle on the stipulation. Otherwise, you're just picking a number out of the air. Sure. Which you can't do because you've got a statute that says here's the maximum that you can be punished. Absolutely correct. And as the district court in Bride recognized, the guidelines are always going to be a factor. They're always going to be a factor in the plea negotiations of the parties. So the fact that you have to go through that calculus to come up with an agreed sentence doesn't mean that the agreement is based solely on the guidelines. No doubt they're a consideration. No doubt that they are a factor in the plea negotiations of the parties. But that's not enough. Thank you. Thank you, counsel. Counsel, although you went over, I want to give you 30 seconds just in case. I'd only comment on one thing. 3582C2 requires that it be based on it was essential to this agreement that there be an accurate guideline calculation. That's what the government negotiated for. Judge Sedgwick was obliged, if he decided to accept it, to impose that sentence at the time. 3582C2 comes post and it says based on and this is what we contracted for and I think we're entitled to it and it should be resolved in the merits. Thank you. Thank you, counsel. United States v. Powers is submitted.
judges: Kleinfeld, Tashima, Tallman